**ORAL ARGUMENT NOT YET SCHEDULED**

## No. 18-7185

# In the United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

K&D LLC, trading as Cork,

*Plaintiff-Appellant,*

v.

TRUMP OLD POST OFFICE LLC; DONALD J. TRUMP,

*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Columbia

## BRIEF OF DEFENDANTS-APPELLEES
## TRUMP OLD POST OFFICE, LLC AND DONALD J. TRUMP

Rebecca Woods
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, D.C. 20004
T. 202.463.2400
rwoods@seyfarth.com

Esther Slater McDonald
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.,
    Suite 2500
Atlanta, Georgia 30309
T. 404.885.1500
emcdonald@seyfarth.com

*Counsel for*
*Trump Old Post Office, LLC*

Eric W. Sitarchuk
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
T. 215.963.5000
eric.sitarchuk@morganlewis.com

Fred F. Fielding
Michael E. Kenneally
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
T. 202.739.3000
fred.fielding@morganlewis.com
michael.kenneally@morganlewis.com

*Counsel for Donald J. Trump*

## CERTIFICATE AS TO PARTIES, RULINGS & RELATED CASES

In accordance with Circuit Rule 28(a)(1), Defendants certify:

**(A) Parties and Amici.**  Plaintiff-Appellant is K&D LLC, trading as Cork.  Defendants-Appellees are Trump Old Post Office, LLC, and President Donald J. Trump.  No other person or entity was made a formal party to the underlying district court case.  There are no amici.  In accordance with Federal Rule of Appellate Procedure 26.1 and Circuit Rules 26.1 and 28(a)(1)(A), counsel for Trump Old Post Office, LLC state that neither it nor any of its members is publicly traded.

**(B) Rulings Under Review.**  The rulings under review are the Honorable Richard J. Leon's (1) Minute Order denying Plaintiff's motion to remand, filed January 2, 2018, JA9-10, and (2) Memorandum Opinion and Order granting Defendants' motion to dismiss, dated November 24, 2018 and filed November 26, 2018, JA11-23.  Neither ruling is published in an official reporter, although the November 26 memorandum opinion is available at 2018 WL 6173449.

**(C) Related Cases.**  Before removal, this case was in D.C. Superior Court.  *See K&D LLC v. Trump Old Post Office LLC*, No. 2017 CA 001560 B (D.C. Super. Ct.).

i

## TABLE OF CONTENTS

**Page**

CERTIFICATE AS TO PARTIES, RULINGS & RELATED CASES........i

INTRODUCTION.................................................................... 1

STATEMENT OF THE ISSUES.............................................. 3

STATUTES & REGULATIONS................................................ 4

STATEMENT OF THE CASE ................................................. 4

    I.    Cork Files This Lawsuit Claiming That Defendants
        Are Engaged In Unfair Competition Because President
        Trump Is President. .................................................. 4

    II.   The District Court Denies Cork's Motion To Remand
        And Dismisses The Amended Complaint Based On
        Well-Settled D.C. Law............................................... 7

SUMMARY OF ARGUMENT .................................................. 9

ARGUMENT ........................................................................ 12

    I.    President Trump Properly Removed This Action Under
        The Federal Officer Removal Statute.................................. 12

        A.    President Trump Raises Two Colorable Federal
            Defenses. .................................................. 13

            1.   The Constitution Bars State-Imposed
                Requirements For Holding Federal Office. ........ 15

            2.   Absolute Presidential Immunity Bars Civil
                Liability Based On The Presidency. ................... 21

        B.    This Action Is Connected Or Associated With The
            Presidency. .................................................. 29

# TABLE OF CONTENTS
(continued)

**Page**

II.   Defendants Properly Removed This Action Because It Necessarily Raises Disputed And Substantial Federal Issues. ................................................................ 32

III.  Cork's Amended Complaint Fails To State A Claim Under Well-Settled D.C. Tort Law. ..................................... 36

    A.   Cork Fails To Allege Any Of The Types Of Conduct That Qualify As Unfair Competition Under D.C. Law. ........................................................ 37

    B.   This Court Has Already Rejected Cork's Theory Of Unfair Competition. ........................................ 43

IV.   In The Alternative, Cork's Claim Is Foreclosed By The President's Federal Defenses. ............................... 49

CONCLUSION ............................................................... 49

CERTIFICATE OF COMPLIANCE ...................................... 51

CERTIFICATE OF SERVICE ............................................ 52

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arbaugh v. Y&H Corp.,*
  546 U.S 500 (2006) ................................................................ 14

*\*B&W Mgmt., Inc. v. Tasea Inv. Co.,*
  451 A.2d 879 (D.C. 1982) ........................................ 2, 37, 39, 42, 48

*Bender v. Jordan,*
  623 F.3d 1128 (D.C. Cir. 2010) .......................................... 36

*Better Gov't Bur., Inc. v. McGraw,*
  904 F. Supp. 540 (S.D. W. Va. 1995) ................................ 40, 41

*Boyle v. United Techs. Corp.,*
  487 U.S. 500 (1988) ........................................................ 35

*Brown-Brand Realty Co. v. Saks & Co.,*
  214 N.Y.S. 230 (N.Y. Sup. Ct. 1925) ................................ 39

*Bus. Equip. Ctr. v. DeJure-Amsco Corp.,*
  465 F. Supp. 775 (D.D.C. 1978) ........................................ 41

*Butler v. Coast Elec. Power Ass'n,*
  926 F.3d 190 (5th Cir. 2019) ........................................ 14, 15

*Caltex Plastics, Inc. v. Lockheed Martin Corp.,*
  824 F.3d 1156 (9th Cir. 2016) ........................................ 46

*Camarda v. Certified Fin. Planner Bd. of Standards, Inc.,*
  672 F. App'x 28 (D.C. Cir. 2016) ...................................... 38

*Caterpillar, Inc. v. Williams,*
  482 U.S. 386 (1987) ........................................................ 36

*Cavallini v. State Farm Mut. Auto Ins. Co.,*
  44 F.3d 256 (5th Cir. 1995) ............................................ 25

\* Authorities upon which we chiefly rely are marked with asterisks.

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Caver v. Cent. Ala. Elec. Coop.*,
  845 F.3d 1135 (11th Cir. 2017) ........................................... 30

*Ching v. Mitre Corp.*,
  921 F.2d 11 (1st Cir. 1990) ............................................... 26

*Clinton v. Jones*,
  520 U.S. 681 (1997) ....................................................... 24

*Colorado v. Symes*,
  286 U.S. 510 (1932) ....................................................... 13

*Dial A Car, Inc. v. Transp., Inc.*,
  132 F.3d 743 (D.C. Cir. 1998) ............................................ 48

*Dist. of Columbia v. Merit Sys. Prot. Bd.*,
  762 F.2d 129 (D.C. Cir. 1985) ............................................ 12

*Doe v. Stephens*,
  851 F.2d 1457 (D.C. Cir. 1988) ........................................... 16

*Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp.*
  642 F.2d 527 (D.C. Cir. 1980) ............................................ 16

*Econ. Research Servs., Inc. v. Resolution Econ., LLC*,
  208 F. Supp. 3d 219 (D.D.C. 2016) ................................... 36, 38

*Erie R.R. v. Tompkins*,
  304 U.S. 64 (1938) ........................................................ 42

*Fairbanks v. Roller*,
  314 F. Supp. 3d 85 (D.D.C. 2018) ........................................ 47

*Fort Lincoln Civic Ass'n v. Fort Lincoln New Town Corp.*,
  944 A.2d 1055 (D.C. 2008) ............................................... 45

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Furash & Co. v. McClave,*
    130 F. Supp. 2d 48 (D.D.C. 2001) ....................................... 41

*Gilly v. Hirsh,*
    48 So. 422 (La. 1909) ........................................................... 39

*\*Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.,*
    545 U.S. 308 (2005) ................................. 3, 10, 32, 33, 35, 36

*Hancock v. Train,*
    426 U.S. 167 (1976) ............................................................. 16

*Hanley-Wood LLC v. Hanley Wood LLC,*
    783 F. Supp. 2d 147 (D.D.C. 2011) ..................................... 41

*Hughes v. Tobacco Inst., Inc.,*
    278 F.3d 417 (5th Cir. 2001) ............................................... 48

*In re Commw.'s Motion to Appoint Counsel Against or Directed*
    *to Def. Ass'n of Phila.,*
    790 F.3d 457 (3d Cir. 2015) ................................................ 30

*Int'l News Serv. v. Associated Press,*
    248 U.S. 215 (1918) ............................................................. 42

*Jamison v. Wiley,*
    14 F.3d 222 (4th Cir. 1994) ................................................ 14

*\*Jefferson Cty. v. Acker,*
    527 U.S. 423 (1999) ................................. 13, 17, 18, 31, 32

*Johnson v. Maryland,*
    254 U.S. 51 (1920) ........................................... 16, 17, 18, 20

*McCulloch v. Maryland,*
    17 U.S. 316 (1819) ............................................................... 16

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Merrill Lynch, Pierce, Fenner & Smith Inc. v. Mensing,*
  136 S. Ct. 1562 (2016) ........................................................... 36

*Mesa v. California,*
  489 U.S. 121 (1989) .......................................................... 13, 15

*Morgan v. Huntington Ingalls, Inc.,*
  879 F.3d 602 (5th Cir. 2018) .................................................. 12

*Newdow v. Bush,*
  355 F. Supp. 2d 265 (D.D.C. 2005) ........................................ 25

*Nixon v. Fitzgerald,*
  457 U.S. 731 (1982) ........................................... 21, 22, 23, 24

*Novak v. Capital Mgmt. & Dev. Corp.,*
  452 F.3d 902 (D.C. Cir. 2006) ............................................... 47

*Pitt v. Dist. of Columbia,*
  491 F.3d 494 (D.C. Cir. 2007) ............................................... 42

*\*Ray v. Proxmire,*
  581 F.2d 998 (D.C. Cir. 1978) ...........................3, 36, 43, 44, 45, 47, 48

*Rivet v. Regions Bank of La.,*
  522 U.S. 470 (1998) .............................................................. 36

*Russello v. United States,*
  464 U.S. 16 (1983) ............................................................... 30

*Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC,*
  13 F. Supp. 3d 62 (D.D.C. 2014) ....................................... 38, 41

*Sawyer v. Foster Wheeler LLC,*
  860 F.3d 249 (4th Cir. 2017) ................................................. 30

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Scanwell Labs., Inc. v. Thomas,*
    521 F.2d 941 (D.C. Cir. 1975) .................................................. 36, 41, 42

*Shamhart v. Morrison Cafeteria Co.,*
    32 So. 2d 727 (Fla. 1947) ................................................................ 39

*Shapiro v. McManus,*
    136 S. Ct. 450 (2015) ...................................................................... 14

*Sperry v. Florida ex rel. Fla. Bar,*
    373 U.S. 379 (1963) ........................................................................ 20

*Steel Co. v. Citizens for a Better Env't,*
    523 U.S. 83 (1998) .................................................................... 14, 15

*U.S. Term Limits, Inc. v. Thornton,*
    514 U.S. 779 (1995) ........................................................................ 21

*Unidisco, Inc. v. Schattner,*
    824 F.2d 965 (Fed. Cir. 1987) ......................................................... 47

*Wankier v. Crown Equip. Corp.,*
    353 F.3d 862 (10th Cir. 2003) ........................................................ 47

*Willingham v. Morgan,*
    395 U.S. 402 (1969) ........................................................................ 27

*Zeringue v. Crane Co.,*
    846 F.3d 785 (5th Cir. 2017) .......................................................... 30

**STATUTES & CONSTITUTIONAL PROVISIONS**

4 U.S.C. § 111 ..................................................................................... 18

28 U.S.C. § 1442 ...................................................1, 9, 12, 14, 15, 29, 30

Removal Clarification Act of 2011, Pub. L. No. 112-51, 125 Stat.
    545 ................................................................................................ 29

viii

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

U.S. CONST. art. II, § 1, cl. 5 ................................................... 4, 10, 21, 49

U.S. CONST. art. III, § 2, cl. 1 .................................................... 13

U.S. CONST. art. VI, cl. 2 .......................................... 4, 10, 16, 20, 21, 49

**OTHER AUTHORITIES**

H.R. REP. NO. 112-17, pt. 1 (2011) .................................................. 29, 31

W. PAGE KEETON, PROSSER & KEETON ON THE LAW OF TORTS (5th ed. 1984) ................................................................. 39

WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS (4th ed. 1971) ......................................................................... 37, 39

## INTRODUCTION

Just weeks into his Presidency, K&D, LLC sued Donald J. Trump and co-Defendant Trump Old Post Office, LLC in D.C. Superior Court. Distilled to its essence, the theory of this lawsuit is that the Trump Presidency transformed Defendants' otherwise lawful conduct into tortious unfair competition. K&D owns and operates Cork Wine Bar, a D.C. restaurant and bar. In Cork's view, dining establishments in the Trump International Hotel gain an unlawful advantage "from Defendant Donald J. Trump being the President of the United States." JA36 (AC ¶ 2). As a result, Cork wants this allegedly unfair competition enjoined. The complaint offers a few proposals to remedy Cork's asserted claim: (a) Defendants should close the Hotel and its restaurants, (b) the Trump family should divest all its interests in the Hotel, or (c) President Trump should resign from office. JA44 (AC ¶ 42).

In the face of this extraordinary claim that D.C. tort law supports ordering the President of the United States to rearrange his personal finances or resign, President Trump removed the action under the federal officer removal statute, 28 U.S.C. § 1442. That statute empowers federal officers to remove a case to federal court so long as (1) they assert a non-

1

frivolous federal defense and (2) there is some connection or association between the case and their federal office. This removal statute, unlike others, must be liberally construed under Supreme Court precedent.

President Trump easily satisfied its modest requirements. First, he raised two substantial federal defenses—preemption and presidential immunity—to Cork's efforts to impose financially burdensome liability under D.C. tort law based on President Trump's presidential office. Second, he highlighted the case's overt dependence on President's Trump service in office. By the complaint's own repeated admission, the conduct would not be tortious but for President Trump's Presidency. This case thus presents a textbook scenario for federal officer removal. Cork's strained efforts to challenge removal, on the other hand, ignore the governing legal standard and Cork's own pleading.

On the merits, Cork's appeal fares no better. Although the President raised two meritorious federal defenses, the district court chose not to address them, relying instead on the failure of Cork's claim as a matter of D.C. law. Unfair competition is a limited tort in the District: plaintiffs must allege specific types of prohibited conduct in order to state a claim. *See, e.g.*, *B&W Mgmt., Inc. v. Tasea Inv. Co.*, 451 A.2d 879, 881

2

n.3 (D.C. 1982).  Cork alleged no such conduct.  What is more, Cork's particular theory of unfair competition is blocked by this Court's precedent.  Decades ago, this Court rejected the very argument that Cork presses here—that deriving a competitive advantage from federal office is actionable unfair competition under D.C. law.  *Ray v. Proxmire*, 581 F.2d 998, 1003 (D.C. Cir. 1978) (per curiam).  Cork does not and cannot show that the district court's reliance on these binding authorities was erroneous.

Because the district court faithfully applied well-settled law to Cork's strained allegations, its judgment should be affirmed in full.

## STATEMENT OF THE ISSUES

1.    Did President Trump properly remove this case under the federal officer removal statute?

2.    Did Defendants properly remove this case under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005)?

3.    Is Cork's claim foreclosed as a matter of D.C. tort law in light of well-settled D.C. Court of Appeals and D.C. Circuit precedent?

4.    Alternatively, is Cork's claim barred by the Constitution's Supremacy Clause and Presidential Eligibility Clause, or by the doctrine of absolute presidential immunity?

## STATUTES & REGULATIONS

All applicable statutes, etc., are contained in the Brief for the Appellant.

## STATEMENT OF THE CASE

## I.    Cork Files This Lawsuit Claiming That Defendants Are Engaged In Unfair Competition Because President Trump Is President.

President Trump was sworn into office on January 20, 2017.  JA31 (C ¶ 31); JA42 (AC ¶ 31).[1]  On March 9, 2017, Cork filed this lawsuit in D.C. Superior Court.  JA34.  It asserts a single claim:  unfair competition in alleged violation of D.C. law.  JA31-33 (C ¶¶ 30-42); JA42-44 (AC ¶¶ 30-42).  In Cork's view, Defendants are liable for unfair competition.

---

[1]  Because the original complaint governs Defendants' removal, *see infra* pp. 25-26, while the amended complaint governs the dismissal order, Defendants cite and refer to both pleadings, as appropriate.  As Cork notes, however, the amended complaint made only three small changes.  Cork Br. 6 n.1.

JA24 (C ¶ 1); JA35 (AC ¶ 1).  Cork alleges that it directly competes with the Trump International Hotel's dining establishments and meeting spaces in the D.C. food and beverage market.  JA25, 27, 30-32 (C ¶¶ 2, 13-14, 24-29, 32-33); JA36, 38, 41-43 (AC ¶¶ 2, 13-14, 24-29, 32-33).  It also alleges that Defendants' purported conduct has caused Cork to suffer business losses.  JA33 (C ¶ 41); JA44 (AC ¶ 41).

Cork's whole theory of unfair competition rests on President Trump's federal office.  In Cork's own words, "Plaintiff's claims are based on the unfair advantage that the Trump International Hotel and its dining establishments . . . has gained from Defendant Donald J. Trump being the President of the United States."  JA25 (C ¶ 2); JA36 (¶ 2).  The alleged unfair competition occurs only "while Defendant Donald J. Trump serves as President of the United States."  JA32 (C ¶ 33); JA43 (AC ¶ 33).

Indeed, according to the complaints, President Trump's tenure in office establishes both the beginning and the (eventual) end of the alleged unfair competition:  Cork "does not object to, nor does it assert any legal basis to complain about competition from the Hotel or its restaurants prior to January 20, 2017, when Defendant Donald J. Trump began

5

serving as President," JA31 (C ¶ 31); JA42 (AC ¶ 31); and Cork claims

that President Trump's "resigning as President of the United States"

would stop the alleged unfair competition, JA33 (C ¶ 42); JA44 (AC ¶ 42).

Cork's pleadings offer a few different theories about *why* the Trump

Presidency might make the Hotel's otherwise lawful operations unlawful.

In places, Cork speculates that the United States government might take

official action to benefit the Hotel's patrons:

- "The reason for the [post-inauguration] increase in business for Defendants was the perception by many of the customers and prospective customers of the Hotel . . . that it would be to their advantage in their dealings with President Donald J. Trump and other agencies of the United States Government if they patronized the hotel." JA28 (C ¶ 18); JA39 (AC ¶ 18).

- "[L]obbyists, foreign governments, and governmental contractors . . . may choose, to the detriment of Cork, to conduct business at the Hotel and its restaurants in order to gain influence or advantage." JA31 (C ¶ 29); JA42 (AC ¶ 29).

The original complaint also suggested that President Trump was

using the Presidency to promote his Hotel. It alleged, for instance, that

"[i]mmediately following his inauguration, during the nationally televised inaugural parade itself, President Donald J. Trump and his family chose to exit their motorcade near the Hotel, thereby maximizing television coverage of the event and drawing further attention to the property." JA28 (C ¶ 20(b)). Two subparagraphs later, Cork alleged that "President Donald J. Trump highlighted the Hotel in a meeting with a senior member of the U.S. House of Representatives and generated media promotion/coverage of the Hotel." JA29 (C ¶ 20(d)).

At other times, the complaints seem preoccupied with the theory that the President's assumption of office breached a provision in the Lease between the United States Government and Trump Old Post Office, LLC. JA26-27, 32-33 (C ¶¶ 7-11, 35-39); JA37-38, 43-44 (AC ¶¶ 7-11, 35-39). The U.S. General Services Administration, however, has examined that question and concluded contrary to Cork that President Trump's assumption of office did not violate the Lease. JA84-94.

## II.    The District Court Denies Cork's Motion To Remand And Dismisses The Amended Complaint Based On Well-Settled D.C. Law.

Shortly after Defendants removed this action to federal district court, *see* JA46-63, Cork filed a motion to remand, D. Ct. Dkt. 12.

7

Although Defendants had already moved to dismiss the original complaint, the district court granted Cork's opposed motion to stay the case pending a ruling on the remand motion. JA4 (minute order dated June 13, 2017). The district court later denied Cork's motion to remand in a minute order. JA9.

Cork then sought to amend its complaint in three small ways. D. Ct. Dkt. 28; *see* Cork Br. 6 n.1. First, it wanted to update the allegation of Cork's street address after the restaurant relocated across the street. JA36 (AC ¶ 3). Second, it wanted to delete the inaugural-parade allegation. JA39 (AC ¶ 20). And, third, it wanted to add language stating that the meeting between President Trump and the unnamed U.S. representative occurred before the inauguration. JA40 (AC ¶ 20(c)). The district court granted leave to amend and denied Defendants' motions to dismiss the original complaint as moot. JA4 (minute order dated Feb. 12, 2018).

Following new motions to dismiss, a full round of briefing, and oral argument, the district court dismissed the amended complaint in full. JA11-23. The court held that, although "there are constitutional questions of profound weight and import lurking within the contours of

this case," basic principles of D.C. unfair competition law suffice to dismiss Cork's complaint for failure to state a claim. JA5-6. As courts applying D.C. unfair competition law have repeatedly held, only specific acts constitute unfair competition under District law, and Cork's complaint does not allege any of those acts. JA6-7. The "quasi-revisionist gloss" of Cork's briefing does not do so either. JA8. But even if that dispositive failure were overlooked, Cork's theory of liability would fail because deriving a business advantage from fame is not, and should not be tortious, and this Court has already rejected the argument that deriving a business advantage from holding a federal office is actionable under the District's law of unfair competition. JA9-10.

## SUMMARY OF ARGUMENT

I.    President Trump properly removed this action under the federal officer removal statute, 28 U.S.C. § 1442. That statute is broadly construed to allow federal officers to remove actions to federal court so long as (1) they raise a colorable—*i.e.*, non-frivolous—federal defense and (2) the action is related to—*i.e.*, connected or associated with—the federal office. President Trump readily satisfied both requirements. He asserts two separate federal defenses that are not just colorable but meritorious,

9

which the district court described as "of profound weight and import." First, the Supremacy Clause and Presidential Eligibility Clause would preempt any efforts by the District of Columbia to impose requirements for serving as President. Second, the doctrine of presidential immunity forbids Cork's attempt to impose personal liability on a President for his service as President. By making clear in its pleadings that its claim depends on President Trump's assuming and remaining in presidential office, including his ability to take official action for the benefit of Hotel patrons, Cork's claim implicates both of these defenses. And for the same reasons, this case is more than sufficiently related to, connected with, and associated with the Presidency to justify removal.

II.    Apart from the federal officer removal statute, Defendants properly removed this action under Supreme Court precedent that allows removal of cases that necessarily present a disputed and substantial federal question. *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005). On Cork's theory, President Trump's assumption of office breached the Lease between the United States Government and Trump Old Post Office, LLC for the Hotel premises. In addition, remedying Cork's claimed injury would require reformation or

10

rescission of that Lease or the President's resignation. These federal questions are necessarily presented, vigorously disputed, and substantial, and having a federal court decide them is wholly appropriate in this unusual case.

III.    On the merits, Cork's claim fails for a simple reason. In the District of Columbia, unfair competition is a limited doctrine. Under D.C. Court of Appeals precedent, moreover, the tort only forbids certain delineated actions, and Cork has not alleged any such action here. Instead, Cork wishes to remove any limits on the doctrine based on its subjective and expedient notions of fairness—including most saliently the notion that it should be unlawful for a business to operate if it benefits from its association with a government official. But this Court has squarely rejected that very argument in binding precedent that cannot be distinguished or disregarded—especially where, as here, there is no contrary authority. This binding precedent requires the dismissal of Cork's complaint.

IV.    Alternatively, Cork's claim would fail against the President's constitutional and presidential immunity defenses. The Court need not

reach those issues, however, because the unfair competition case law resolves this case on its own.

## ARGUMENT

## I.    President Trump Properly Removed This Action Under The Federal Officer Removal Statute.

In relevant part, the federal officer removal statute states that "[a] civil action . . . that is commenced in State court" may be removed to federal district court if it "is against or directed to . . . any officer . . . of the United States . . . in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). For these purposes, a "'State court' includes the Superior Court of the District of Columbia." *Id.* § 1442(d)(6).

"When federal parties remove an action under section 1442(a)(1), the federal court assumes jurisdiction over all the claims and parties in the case." *Dist. of Columbia v. Merit Sys. Prot. Bd.*, 762 F.2d 129, 132 (D.C. Cir. 1985). So if President Trump's federal officer removal was proper, the claims against his co-Defendant were also properly removed. *See, e.g.*, *Morgan v. Huntington Ingalls, Inc.*, 879 F.3d 602, 606 (5th Cir. 2018) ("If the case is removable by [one of the defendants], the entire case

will be deemed removable, such that [the plaintiff's] claims against all other defendants . . . will be heard in federal court as well.").

The federal officer removal statute amply supports the removal here. The Supreme Court has long instructed that this statute and its predecessors "are to be liberally construed to give full effect to the purposes for which they were enacted." *Colorado v. Symes*, 286 U.S. 510, 517 (1932). Time and again, the Court has "rejected a 'narrow, grudging interpretation' of the statute." *Jefferson Cty. v. Acker*, 527 U.S. 423, 431 (1999) (citation omitted). A federal officer must satisfy two requirements: he or she (1) must "raise a colorable federal defense" and (2) "must show a nexus" between the challenged "conduct and asserted official authority." *Id.* (citation omitted). Neither requirement is onerous, and each is easily satisfied here.

## A.    President Trump Raises Two Colorable Federal Defenses.

The statute's colorable-defense requirement ensures that there is enough of a federal issue in the case to bring it within the federal-question category of the federal judicial power. *See* U.S. CONST. art. III, § 2, cl. 1; *Mesa v. California*, 489 U.S. 121, 136 (1989). Determining whether a federal defense is "colorable" therefore involves the same

inquiry as determining whether an asserted federal claim is sufficiently colorable for federal-question jurisdiction. In the latter context, only claims "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy" fall below the threshold. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (citation omitted); *see also Shapiro v. McManus*, 136 S. Ct. 450, 455-56 (2015); *Arbaugh v. Y&H Corp.*, 546 U.S 500, 513 n.10 (2006). So, too, a federal defense is "colorable" as long as it is offered in good faith and not "wholly insubstantial and frivolous." *Butler v. Coast Elec. Power Ass'n*, 926 F.3d 190, 195 (5th Cir. 2019) (citation omitted); *see also Jamison v. Wiley*, 14 F.3d 222, 238 n.17 (4th Cir. 1994) (finding defense sufficiently "colorable" for § 1442 because it was "not frivolous").

In his notice of removal and lower court briefing, President Trump asserted two distinct federal defenses to Cork's claim. *See* JA59-60 (Notice of Removal ¶¶ 21-23). He argued (1) that the Constitution prohibits state and local governments from imposing conditions on holding federal office and (2) that the doctrine of absolute presidential

immunity prohibits plaintiffs who sue the President in an individual capacity from grounding civil liability in the Presidency.

Cork cannot come close to showing that each of these defenses is "frivolous" and "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme] Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Butler*, 926 F.3d at 195 (citation omitted); *Steel Co.*, 523 U.S. at 89 (citation omitted).  On the contrary, as the district court acknowledged, these arguments present "constitutional questions of profound weight and import."  JA5.  These defenses are not just colorable; they are meritorious and foreclose Cork's claim.[2]

### 1. The Constitution Bars State-Imposed Requirements For Holding Federal Office.

Cork devotes barely any attention to the President's first defense: even if Cork were correct in contending that the District of Columbia

---

[2] Instead of acknowledging the governing "colorable" standard, Cork places inordinate reliance on *Mesa v. California*, 489 U.S. 121 (1989). But *Mesa* does not identify the contours of the "colorable" standard, nor does it help Cork.  In that case, the federal officer defendants asserted no federal defense at all, colorable or otherwise, but instead argued that they did not need to do so.  *Id.* at 134.  The Supreme Court disagreed, holding that "[f]ederal officer removal under 28 U.S.C. § 1442(a) must be predicated upon averment of a federal defense."  *Id.* at 139.  President Trump averred two such defenses here, and they satisfy the applicable "colorable" standard.

forbids federal officials from owning interests in a D.C. business, the Constitution precludes the District of Columbia from imposing any requirements for holding federal office.

The Supremacy Clause makes federal law "the supreme Law of the Land" and obligates state courts to follow federal law notwithstanding "any Thing in the Constitution or Laws of any State to the Contrary." U.S. CONST. art. VI, cl. 2. This provision means, among other things, that states may not directly regulate the federal government or its instrumentalities. *See, e.g.*, *Hancock v. Train*, 426 U.S. 167, 178-79 (1976); *Johnson v. Maryland*, 254 U.S. 51, 55-56 (1920); *McCulloch v. Maryland*, 17 U.S. 316, 427-29 (1819). The District of Columbia is subject to the same restriction. *See Don't Tear It Down, Inc. v. Pa. Ave. Dev. Corp.* 642 F.2d 527, 534-35 (D.C. Cir. 1980) (applying *Hancock*, *Johnson*, and other cases in this line to the District of Columbia's efforts to regulate the federal government); *Doe v. Stephens*, 851 F.2d 1457, 1465 (D.C. Cir. 1988) (similar).

As *Johnson* illustrates, this prohibition on state and local regulation of the federal government includes a prohibition on creating state or local requirements for serving in the federal government. In

*Johnson*, the state of Maryland attempted to punish a United States postal employee for driving a mail truck without a state driver's license. 254 U.S. at 55. The question was whether the state could require the federal employee "to obtain a license by submitting to an examination concerning his competence . . . before performing his official duty in obedience to superior command." *Id.* The Court answered no: while states can perhaps enforce "general rules that might affect incidentally the mode of carrying out the [federal] employment—as, for instance, a statute or ordinance regulating the mode of turning at the corners of streets," states have no right to "require[] qualifications in addition to those that the [federal] Government has pronounced sufficient" for a federal position. *Id.* at 56-57.

That is no less true today. In *Acker*, the Supreme Court upheld the removal of a case against two federal judges under the federal officer removal statute. 527 U.S. at 427. Alabama's Jefferson County had imposed an occupational tax on those who worked within its borders, and it initiated collection proceedings after the federal judges refused to pay. *Id.* Ultimately, the Court concluded that the judges' arguments for avoiding the tax, though sufficiently "colorable" to support removal, were

unsuccessful on their merits. *Id.* at 435-43. That was because the Jefferson County law "serve[d] a revenue-raising, not a regulatory, purpose," and the doctrine governing state or local *taxation* of federal employees is more tolerant than the doctrine governing state or local *regulation* of federal employees. *Id.* at 440; *see also* 4 U.S.C. § 111(a) (expressly authorizing nondiscriminatory state and local taxes of federal employees' pay). What is relevant here, however, is that the Court reaffirmed the holding of *Johnson*: "of course" states "cannot make it unlawful to carry out the duties of a federal office without local permission." *Acker*, 527 U.S. at 440-41. The Court simply concluded that Alabama and Jefferson County had "not endeavor[ed] to do so" through their run-of-the-mill tax. *Id.* at 441.[3]

That excuse is not available for the unfair competition cause of action that Cork attributes (erroneously) to the District of Columbia.

---

[3] Cork mischaracterizes *Acker* by claiming that the ordinance made it "unlawful" to engage in one's occupation without paying the tax. Cork Br. 24. The Supreme Court ruled that the ordinance's "incautious" use of the word "unlawful" did *not* reflect the ordinance's actual "practical impact." *Acker*, 527 U.S. at 440. In all events, Cork fails to grapple with the upshot of the Court's rulings: while the judges misconstrued the ordinance they were challenging, if their construction had been right, the ordinance could not lawfully have applied to them. *Id.* at 440-41. And removal was proper either way. *Id.* at 432-33.

There is no revenue-raising aim, of course, behind Cork's vision of D.C. tort law. Cork instead is seeking to use D.C. law to set conditions for lawful service as President. It argues, for example, that D.C. law obligates the President of the United States to fulfill the District's purported standards about what sorts of investments are appropriate for government officials, before taking office. Cork Br. 19-20. Those purported standards purportedly hinge on the defendant's holding public office. *See id.* at 45-50. The unfairness alleged here exists only "while Defendant Donald J. Trump serves as President." JA32 (C ¶ 33); JA43 (AC ¶ 33).

In fact, the complaints expressly disclaim any contention that Defendants' actions were unlawful before the inauguration: "Plaintiff does not object to, nor does it assert any legal basis to complain about competition from the Hotel or its restaurants prior to January 20, 2017, when Defendant Donald J. Trump began serving as President." JA31 (C ¶ 31); JA42 (AC ¶ 31). It is the alleged advantage that the Hotel "has gained from Defendant Donald J. Trump being the President of the United States" that is claimed to be unfair. JA25 (C ¶ 2); JA36 (AC ¶ 2).

In short, serving as President while owning certain business interests is unlawful under Cork's view of D.C. law. President Trump must pick one or the other. If he does not conform to the District's purported standards by shuttering or selling the Hotel, Cork claims that the President must resign the Presidency to remedy Cork's asserted claim. JA33 (C ¶ 42); JA44 (AC ¶ 42).

That is exactly the sort of judgment that the District of Columbia is not allowed to make—for any federal office. States may not obligate U.S. Post Office employees to satisfy state requirements if they wish to complete their mail routes. *See Johnson*, 254 U.S. at 55-57. Nor may states obligate U.S. Patent Office practitioners to satisfy state requirements if they wish to prepare Patent Office applications. *Sperry v. Florida ex rel. Fla. Bar*, 373 U.S. 379, 385 (1963). It should go without saying, then, that neither states nor the District of Columbia may obligate President Trump to satisfy their requirements if he wishes to serve out his term.

For the Presidency, moreover, such requirements would conflict not only with the Supremacy Clause but with other constitutional provisions as well. In *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779, 798-800

20

(1995), the Supreme Court held that states may not impose term limits on their Representatives and Senators, on the ground that states may not add to the qualifications prescribed by the Constitution, even for their own members of Congress.  The Justices disagreed over that holding, but every one of them agreed that states could not add to the qualifications that the Constitution establishes for the Presidency.  *Id.* at 803-04; *id.* at 861 (Thomas, J., dissenting).  A victory for Cork here would effectively overrule that unanimous view.  It would permit the District of Columbia to impose a new qualification for the Presidency without any basis in the qualifications that the Constitution itself prescribes in the Presidential Eligibility Clause.  *See* U.S. CONST. art. II, § 1, cl. 5.  The District of Columbia can do nothing of the sort.

### 2.    Absolute Presidential Immunity Bars Civil Liability Based On The Presidency.

Apart from the Supremacy Clause and Presidential Eligibility Clause, President Trump also invokes the defense of presidential immunity.  Various doctrines of official immunity protect officeholders from personal liability stemming from their official position.  In *Nixon v. Fitzgerald*, 457 U.S. 731, 756 (1982), the Supreme Court held that the

President is entitled to absolute immunity for conduct within the "outer perimeter" of the President's official responsibility.[4]

In adopting this standard, the Court determined that the President needs broader immunity than most officials given the President's "unique position in the constitutional scheme." *Id.* at 749-50. The President deals "with matters likely to arouse the most intense feeling," and "the visibility of his office" makes him "an easily identifiable target." *Id.* at 752 (citation and quotation marks omitted). "Cognizance of this personal vulnerability frequently could distract a President from his public duties, to the detriment of not only the President and his office but also the Nation that the Presidency was designed to serve." *Id.* at 753. Simply put, "[b]ecause of the singular importance of the President's duties, diversion of his energies by concern with private lawsuits would raise unique risks to the effective functioning of government." *Id.* at 751.

---

[4] Although *Fitzgerald* addressed damages liability, Cork agrees that *Fitzgerald*'s applicability is not affected by Cork's decision to request only injunctive relief. Cork Br. 22 n.2; *see also* D. Ct. Dkt. 27, at 6 n.2 (acknowledging, in its original opposition brief, that "since the costs of complying with a court order in this case would affect defendant Trump's personal finances, that part of the *Fitzgerald* rationale would apply").

The "outer perimeter" standard reflects the President's unique position. *Id.* at 755. Under this standard, presidential immunity is not limited "to acts in performance of particular functions of office." *Id.* Such a limitation would be inappropriate because "[i]n many cases it would be difficult to determine which of the President's innumerable 'functions' encompassed a particular action" and because it would invite "highly intrusive" "inquir[ies] into the President's motives." *Id.* at 756. In *Fitzgerald* itself, the plaintiff contended that President Nixon had arranged for the termination of the plaintiff's government employment not for legitimate reasons of executive branch oversight, but as unlawful retaliation for embarrassing the Nixon Administration. *Id.* at 734-36, 756. But the "outer perimeter" test did not turn on whether President Nixon's actions were driven by self-interest or violated applicable law. *See id.* at 756-57.

Presidential immunity thus bars liability arising out of the President's official responsibilities, regardless of whether the challenged actions were taken for the purpose of discharging official presidential duties. The liability Cork seeks to impose falls within this category because it is contingent on President Trump's service in office. As noted

above, Cork concededly had no claim before the inauguration because the Hotel's operations were not even allegedly unlawful then, and Cork concededly would have no claim after the end of the President's term.  *See supra* pp. 18-20.  It is President Trump's Presidency that supposedly makes his interest in the Hotel unlawful.  *Id.*[5]

Cork attempts to avoid immunity by assuming that it applies only where the plaintiff seeks to impose liability for discrete presidential actions.  Cork Br. 25-26.  But that assumption is unwarranted. *Fitzgerald* already establishes that Presidents need not fear personal civil liability based on what they do as President.  If so, it should follow *a fortiori* that Presidents should not have to fear personal liability from their mere status as President, regardless of what they do as President. Whether the liability arises from one of the President's official acts or the sum total of all his acts—his official status itself—the doctrine of presidential immunity applies.

---

[5]  In this respect, the current case is entirely unlike *Clinton v. Jones*, 520 U.S. 681, 686 (1997), where the Supreme Court declined to recognize a temporary presidential immunity for claims that had no connection to President Clinton's official position and even predated his election.

In any event, Cork's pleadings do seek to use discrete presidential acts—acts well within the "outer perimeter" of presidential responsibility—to support Cork's claim. The original complaint expressly faulted the President for allegedly using his official position to publicize the Hotel, including through alleged actions on Inauguration Day, during the inaugural parade. JA28 (C ¶ 20(b)); *see Newdow v. Bush*, 355 F. Supp. 2d 265, 282 (D.D.C. 2005) ("The Inauguration . . . does not reasonably appear to be outside the President's official duties."). In the same vein, the original complaint alleged that "President Donald J. Trump" publicized the Hotel in a meeting with a member of a coordinate branch of the federal government. JA29 (C ¶ 20(c)).

True, after the district court denied Cork's motion to remand, Cork amended its complaint to delete and rewrite these two allegations, respectively. *See* JA39-40 (AC ¶ 20). But the propriety of removal depends on the allegations in the complaint operative at the time of removal, and post-removal amendments make no difference. *See, e.g.*, *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 265 (5th Cir. 1995) ("[R]emoval jurisdiction should be determined on the basis of the state court complaint at the time of removal, and that a plaintiff cannot

defeat removal by amending it."); *Ching v. Mitre Corp.*, 921 F.2d 11, 13 (1st Cir. 1990) ("An amendment to a complaint after removal designed to eliminate the federal claim will not defeat federal jurisdiction.").

And even in the amended complaint, Cork accuses President Trump and White House staffers of "exploiting office for private gain." JA39 (AC ¶ 20). Cork also tries to explain its theory of unfairness by claiming that Hotel patrons believe they will benefit "in their dealings with President Donald J. Trump and other agencies of the United States Government" and gain other "influence or advantage" from choosing to patronize the Hotel. JA39, 42 (AC ¶¶ 18, 29). The language of its appellate brief is revealing in this regard. There, Cork tries to distinguish an unfavorable precedent by claiming that this case presents "implied promises of official favors from an elected official," as well as an increased "likelihood that the U.S. Government (upon instruction from President Trump or his inner circle) will take *official action* to benefit" Hotel patrons. Cork Br. 49-50 (emphasis added). Given Cork's reliance on speculation—baseless though it is—that the President will perform or direct "official action" to benefit Hotel patrons, Cork cannot credibly claim that "any actions on

26

behalf of the Hotel he may take while he is President are in his personal, and not official capacity." *Id.* at 26.[6]

Finally, an inescapable implication of Cork's theory is that the discrete act of taking office—assuming the authority and responsibilities of the Presidency at his inauguration—triggered the alleged liability. Cork agrees that "*if* liability were based on the President's swearing in, that would raise at least a colorable immunity claim." Cork Br. 31. But there is no "if" about it. That's Cork's claim. The last act necessary to complete the tort on Cork's theory was that swearing in, for Cork admits it has no "legal basis to complain about[] competition from the Hotel or its restaurants [before] Donald J. Trump began serving as President." JA31 (C ¶ 31); JA42 (AC ¶ 31).

---

[6] Cork appears to think that President Trump's pre-inauguration pledge to step away from management of his businesses somehow estops him from invoking the presidential immunity defense. Cork Br. 25-26. But what matters is not whether President Trump engaged in the conduct that Cork hypothesizes, let alone whether he admits to having engaged in that conduct: "[i]t was settled long ago that the federal officer, in order to secure removal, need not admit that he actually committed the charged offenses." *Willingham v. Morgan*, 395 U.S. 402, 408 (1969). What matters is that Cork's claim is premised on alleged official acts to which presidential immunity would apply.

Nor can Cork fix the problem by recasting its theory of liability as being about "pre-Presidential inaction," rather than actions taken while President. *See* Cork Br. 20. This is empty semantics. Cork's theory of liability cannot be characterized purely in terms of inaction. Even assuming that failing to divest ownership interests is entirely inactive—as opposed to an affirmative, ongoing act of ownership—Cork's claim would still target a combination of action and inaction. The theory of this case is that it is unlawful to assume and serve in office (action) without divesting financial interests in the Hotel (arguably inaction). Such conduct is analogous to driving a car without a license. Sure, one could characterize the problem with such behavior in terms of pre-driving inaction—*i.e.*, failing to obtain a license before operating the vehicle—but it is more natural and sensible to describe the problem in terms of the action—*i.e.*, driving unlicensed. The same is true here, given Cork's admissions that President Trump's office is an essential ingredient of its claim. In this way, too, Cork's own allegations and arguments demonstrate the applicability of presidential immunity.

**B.    This Action Is Connected Or Associated With The Presidency.**

For much the same reasons, this lawsuit also amply satisfies the federal officer removal statute's second requirement, the "nexus" requirement.

In 2011, Congress amended § 1442 to liberalize the nexus requirement by inserting the words "relating to." *See* Removal Clarification Act of 2011, Pub. L. No. 112-51, § 2(b)(1)(A), 125 Stat. 545, 545. Since then, the requirement has no longer required that the removed case be "*for* . . . an[] act under color of [the] office"; it suffices for the case to be "*relating to* an[] act under color of [the] office." 28 U.S.C. § 1442(a)(1) (emphasis added). According to the legislative history, this change was "intended to broaden the universe of acts that enable Federal officers to remove to Federal court" and "to ensure that any individual drawn into a State legal proceeding based on that individual's status as a Federal officer has the right to remove the proceeding." H.R. REP. NO. 112-17, pt. 1, at 1, 6 (2011), *as reprinted in* 2011 U.S.C.C.A.N. 420, 420, 425.

Courts have appropriately given this new "relating to" language its broad everyday meaning: "it is sufficient for there to be a 'connection' or

29

'association' between the act in question and the federal office." *In re Commw.'s Motion to Appoint Counsel Against or Directed to Def. Ass'n of Phila.*, 790 F.3d 457, 471 (3d Cir. 2015); *see also, e.g.*, *Sawyer v. Foster Wheeler LLC*, 860 F.3d 249, 258 (4th Cir. 2017); *Zeringue v. Crane Co.*, 846 F.3d 785, 793 (5th Cir. 2017); *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1144 (11th Cir. 2017).[7]

There is more than enough of a connection and association between this case and the Presidency. The President's federal position, again, is a necessary condition for Cork's theory of liability. *See supra* pp. 18-20. Cork now claims that it cited "the Inauguration only to demarcate the time at which the unfair competition began," Cork Br. 31, but of course the alleged unfair competition did not start with the president's

---

[7] Cork attempts to reframe the inquiry so that the President's *defense* must relate to acts under color of the President's office. Cork Br. 18. That is not what the statute or any precedent says: the civil *action* must relate to official acts. 28 U.S.C. § 1442(a)(1). But that distinction makes no difference here, where Cork's action itself relates to the President's official acts and the President's two asserted defenses do too. Contrary to Cork's contention, moreover, different phrasing in § 1442(a)'s other paragraphs should not be used to interpret the meaning of paragraph (1). Interpretive principles demand the opposite inference: differences in phrasing within a statute indicate differences in meaning. *See, e.g.*, *Russello v. United States*, 464 U.S. 16, 23 (1983).

assumption of office by sheer temporal coincidence.  On the contrary, according to Cork, the President's assumption of office is what caused the alleged unfair competition to begin.  *See* JA25, 31-33 (C ¶¶ 2, 31, 33, 42); JA36, 42-44 (AC ¶¶ 2, 31, 33, 42).  Without question, this is a case into which the President has been drawn "based on [his] status as a Federal officer," and he thus "ha[d] the right to remove" it.  H.R. REP. NO. 112-17, pt. 1, at 1, 2011 U.S.C.C.A.N. at 420.[8]

Even under the pre-2011 version of the statute, Cork's argument would fail.  Again, the original complaint governs removal.  *See supra* pp. 25-26.  It expressly alleges conduct at the inauguration itself in support of Cork's claim.  *See supra* p. 25.  And both complaints claim that Hotel patrons expect to receive official favors from the U.S. Government at President Trump's direction.  *See supra* pp. 26-27.  Cork's claim is thus at least partly "for" acts under color of presidential office.

In addition, the Supreme Court adopted an expansive understanding of the pre-2011 nexus requirement in *Acker*.  The majority rejected the dissent's view, which Cork clings to, that only conduct

---

[8]  That cannot be said for each in Cork's litany of hypotheticals.  *See* Cork Br. 28-29.  In several if not all of the hypotheticals, liability could arise regardless of the defendant's occupation.  Not so here.

31

"required by the responsibilities of [the federal official's] offices [or] undertaken in the course of job performance" satisfies the nexus requirement. 527 U.S. at 432. The Court held to the contrary that "the circumstances that gave rise to the tax liability, not just the taxpayers' refusal to pay, constitute the basis for the tax collection lawsuits at issue." *Id.* at 433 (citation and quotation marks omitted). Here, as in *Acker*, the circumstances giving rise to the alleged liability include the official's service in office. Without it, the asserted basis for liability would not exist. If that was true under the more demanding, pre-2011 version of the statute, it is all the more true today.

## II. Defendants Properly Removed This Action Because It Necessarily Raises Disputed And Substantial Federal Issues.

Although federal officer removal—on either one of the federal defenses—provides a sufficient basis for upholding the district court's jurisdiction, the court also had jurisdiction under *Grable & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308 (2005). In that case, the Supreme Court reaffirmed the "longstanding" variety of federal-question jurisdiction "over state-law claims that implicate significant federal issues." *Id.* at 312. Under this doctrine, the

32

question is whether the "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

All these conditions are met here. Cork's claim relies on an alleged violation of a lease between Trump Old Post Office, LLC and the U.S. Government. In addition, Cork's requested relief would require reformation or rescission of that lease or would force the President to resign from office. These are disputed and substantial federal issues necessary to Cork's claim.

On August 5, 2013, Trump Old Post Office, LLC entered into a 60-year ground lease with the General Services Administration for the Old Post Office building. JA73-74, 79. Among other things, that Lease requires the lessee to continuously occupy and operate the Old Post Office building as a first-class hotel with a "signature restaurant." JA76-77, 80. The Lease also restricts assignment—and thus a transfer of the business—to non-Trump affiliates by subjecting any assignment to the government's consent. JA81 (§ 6.5); *see also* D. Ct. Dkt. 16-1 at 63 (§§ 15.2-15.3). In addition, § 37.19 of the Lease states:

> No member or delegate to Congress, or elected official of the Government of the United States or the Government of the District of Columbia, shall be admitted to any share or part of this Lease, or to any benefit that may arise therefrom; provided, however, that this provision shall not be construed as extending to any Person who may be a shareholder or other beneficial owner of any publicly held corporation or other entity, if this Lease is for the general benefit of such corporation or other entity.

JA82 (§ 37.19).  Cork's complaints demand that Defendants close or transfer the Hotel if President Trump wishes to remain in office.  JA33 (C ¶ 42); JA44 (AC ¶ 42).  And they allege that Defendants' post-inauguration conduct "violates Section 37.19 of the Lease."  JA32-33 (C ¶¶ 35-39); JA43-44 (AC ¶¶ 35-39).

As a result of Cork's reliance on the Lease and the Lease's terms, Cork's unfair competition claim necessarily raises substantial and disputed federal questions.  The district court could not have granted Cork its requested relief without interpreting and indeed reforming or rescinding the Lease's provisions—including the continuous-operation requirement and the prohibition on assignment without the federal government's approval—or requiring the President's resignation.  Nor could the court have resolved the merits of Cork's claim without deciding

whether Section 37.19 has been breached and whether Cork may rely on such a breach, for Cork made that provision an integral part of its claim. *See* JA32-33 (C ¶¶ 35-42); JA43-44 (AC ¶¶ 35-42).

These questions are disputed and substantial. Defendants disagree that the Lease has been breached, that Cork has any ability to enforce the Lease's terms as a non-party to the Lease, and that courts would be justified in reforming or rescinding the Lease. The General Services Administration also rejects Cork's interpretation of the Lease. JA84; JA93. And there is no question that these issues implicate "a serious federal interest." *Grable*, 545 U.S. at 313. They implicate the federal government's ability to negotiate and enforce the terms of its contracts without interference from third parties. In addition, because provisions like § 37.19 are common in the federal government's contracts, any ruling here could affect many other government contracts as well. *See* JA123 (¶ L); JA126 (¶ L). The federal government's rights under its contracts involve "uniquely federal interests" and "are governed exclusively by federal law." *Boyle v. United Techs. Corp.*, 487 U.S. 500, 504 (1988).

In light of the unusually strong federal interest in this case, exercising federal jurisdiction is unlikely to "portend any more than 'a

35

microscopic effect on the federal-state division of labor.'"  *Bender v. Jordan*, 623 F.3d 1128, 1131 (D.C. Cir. 2010).  Even apart from federal officer removal, therefore, the district court had jurisdiction over this case.[9]

## III.  Cork's Amended Complaint Fails To State A Claim Under Well-Settled D.C. Tort Law.

The district court properly dismissed Cork's amended complaint on the merits for failing to state a claim.  Long ago, this Court observed that "unfair competition . . . is limited in scope in a free market economy based on free and open competition for business."  *Scanwell Labs., Inc. v. Thomas*, 521 F.2d 941, 949 (D.C. Cir. 1975).  That remains D.C. law today.  *See, e.g.*, *Econ. Research Servs., Inc. v. Resolution Econ., LLC*, 208 F. Supp. 3d 219, 231 (D.D.C. 2016) ("[U]nfair competition is a 'limited' tort given our society's encouragement of 'aggressive economic competition.'" (quoting *Proxmire*, 581 F.2d at 1002)).  And under D.C.'s

---

[9] Cork's central authorities did not address the proper application of the *Grable* test and have no relevance here.  *See Merrill Lynch, Pierce, Fenner & Smith Inc. v. Mensing*, 136 S. Ct. 1562 (2016); *Caterpillar, Inc. v. Williams*, 482 U.S. 386 (1987); *Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998).

limited law of unfair competition, none of the conduct Cork alleges amounts to a tort.

### A.     Cork Fails To Allege Any Of The Types Of Conduct That Qualify As Unfair Competition Under D.C. Law.

The D.C. Court of Appeals follows a traditional hornbook approach to unfair competition.  Adopting William Prosser's account, it has held that:

> the following may constitute unfair competition at common law:  defamation, disparagement of a competitor's goods or business methods, intimidation of customers or employees, interference with access to the business, threats of groundless suits, commercial bribery, inducing employees to sabotage, false advertising or deceptive packaging likely to mislead customers into believing goods are those of a competitor[.]

*B&W Mgmt.*, 451 A.2d at 881 n.3 (citing WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS § 130, at 956-57 (4th ed. 1971)).[10]  Based on this statement, courts throughout this circuit, including this Court, have concluded that "[u]nder D.C. law, the common law tort of '[u]nfair

---

[10] Cork incorrectly implies that this passage in *B&W Management* is dictum.  Cork Br. 42.  The D.C. Court of Appeals instead held that the plaintiff's allegations did not "support a common law action for unfair competition" because the allegations did not satisfy the *Prosser* hornbook standard.  *B&W Mgmt.*, 451 A.2d at 881 n.3.

competition is not defined in terms of specific elements, but by the description of various acts that would constitute the tort if they resulted in damage.'" *Camarda v. Certified Fin. Planner Bd. of Standards, Inc.*, 672 F. App'x 28, 30 (D.C. Cir. 2016) (per curiam) (citation omitted); *see also, e.g.*, *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, 13 F. Supp. 3d 62, 70 & n.7 (D.D.C. 2014); *Econ. Research Servs.*, 208 F. Supp. 3d at 231. As a result, a "fail[ure] to establish that the [defendant] committed any of these acts" is fatal to an unfair competition claim under D.C. law. *Camarda*, 672 F. App'x at 30 (rejecting unfair competition claim for this reason).

The district court correctly determined that Cork's amended complaint does not allege any of these acts. JA7. Instead, Cork relies on conclusory labels and aspersions. *See, e.g.*, JA42 (AC ¶ 31) (claiming that the Hotel receives an "unfair advantage" that "unfairly interferes with Cork's business and constitutes unfair competition"); JA43 (AC ¶ 33) (claiming that the Hotel "unfairly competes for customers . . . impairing Cork's ability to compete with the Hotel on a level playing field").

The closest Cork comes to even identifying a species of unfair competition is its suggestion that Defendants interfered with access to

38

Cork's business.  Cork Br. 41-42, 44-45.  As the district court explained, however, "'interference' in this context does not simply mean conduct that redounds to the detriment of the business of another."  JA18.  The hornbook on which the D.C. Court of Appeals relied for its definition of unfair competition shows that "interference with access to the business," in *B&W Management*'s sense, means "*obstruction of the means of access to* [the plaintiff's] *place* of business."   PROSSER, *supra*, § 130, at 956 (emphasis added).   The two examples cited in the treatise involved physically interfering with potential customers' efforts to enter the claimant's shop, *Gilly v. Hirsh*, 48 So. 422, 424 (La. 1909), and blocking potential customers' ability to see into the claimant's business through a show window, *Brown-Brand Realty Co. v. Saks & Co.*, 214 N.Y.S. 230, 231-32 (N.Y. Sup. Ct. 1925), *aff'd*, 218 N.Y.S. 706 (N.Y. App. Div. 1926).[11] Cork never alleges that Defendants hindered anyone's ability to enter Cork's premises, nor does it cite a single authority construing the

---

[11] The most recent edition of the hornbook takes the same position.  *See* W. PAGE KEETON, PROSSER & KEETON ON THE LAW OF TORTS § 130, at 1014-15 & n.96 (5th ed. 1984).  In addition to *Gilly* and *Brown-Brand Realty*, the Fifth Edition cites *Shamhart v. Morrison Cafeteria Co.*, 32 So. 2d 727, 727 (Fla. 1947), where the defendant's customers formed lines outside of the plaintiff's store, "frequently result[ing] in most of the entrances to [the] store being virtually closed to its customers."

allegations that Cork does make as an actionable kind of "interference with access to the business."

The authorities that Cork does cite addressed altogether different allegations. Its central unfair competition authority, *Better Government Bureau, Inc. v. McGraw*, 904 F. Supp. 540 (S.D. W. Va. 1995), gives Cork zero support. The plaintiff there was a "watchdog" association of businesses that alleged that government officials were retaliating against it because of its scrutiny of their official activities. *Id.* at 543-46. Although the district court there provided no real analysis of the basis of the plaintiff's unfair competition claims, it is evident that the plaintiff was not contending that the defendants' political office gave them an improper business advantage. The defendants were not using their political offices to compete with the plaintiff but to engage in intimidation and retaliation, independently wrongful conduct. Specifically, the defendants sought to destroy the plaintiff's ability to do business—preventing it from registering with the state to conduct business under its existing corporate name and intimidating the plaintiff's members into resigning their memberships. *Id.* at 545-46.

The allegations in this case are miles away from *Better Government Bureau*.[12]   Cork has not alleged that Defendants engaged in any independently wrongful conduct to harm Cork.  That defeats any unfair competition claim Cork might wish to bring under D.C. law.  *See, e.g.*, *Scanwell Labs.*, 521 F.2d at 949 ("Scanwell's own complaint alleges that [defendant's] actions were taken to enhance its own competitive position so that, unless the methods alleged to have been used are themselves illegal . . . , no unfair competition action has been stated.").

The district court was correct to recognize that Cork's allegation, at bottom, "is that defendants are acting to realize and maximize the competitive advantage and financial benefits available to them as a result of President Trump's heightened notoriety since taking office." JA18.   But Cork offers no legal support for its charge that such

---

[12] Cork's other unfair competition authorities likewise involve circumstances far afield from the allegations here.  *See Hanley-Wood LLC v. Hanley Wood LLC*, 783 F. Supp. 2d 147, 153 (D.D.C. 2011) (entering *default* judgment against defendants who did not participate in the litigation based on unspecified allegations of interference with the plaintiff's business); *Furash & Co. v. McClave*, 130 F. Supp. 2d 48, 57 (D.D.C. 2001) (denying summary judgment to one defendant based on allegations that supported "claims for breach of fiduciary duty and interference with contract"); *Bus. Equip. Ctr. v. DeJure-Amsco Corp.*, 465 F. Supp. 775, 788 (D.D.C. 1978) (rejecting unfair competition claim); *Sabre Int'l*, 13 F. Supp. 3d at 70-71 (same).

allegations—even if they were true—amount to "a legally redressable wrong." JA19. And Cork cannot make up the gap simply by labeling any competition it dislikes as "interference," for if that maneuver worked there would be no limits left to the tort of unfair competition. *See id.*

Instead of fitting its claim into the rubric that the D.C. Court of Appeals endorsed in *B&W Management*, Cork criticizes the district court for hewing to that decision and others recognizing the limits of unfair competition. Cork Br. 2, 12, 42. Cork wants the courts to open up unfair competition beyond its existing limits, citing incomplete snippets from *Restatements of the Law*, a law review article, and a Supreme Court case that expanded the common law of intellectual property, *International News Service v. Associated Press*, 248 U.S. 215, 236 (1918). But federal courts no longer have general common-law-making authority. *See, e.g.*, *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). So "in considering common law claims, federal courts must apply *existing* law." *Pitt v. Dist. of Columbia*, 491 F.3d 494, 507 (D.C. Cir. 2007). They "have no power to alter or expand the scope of D.C. tort law." *Id.* The district court properly rejected Cork's invitation to expand D.C. tort law in derogation from *B&W Management*, and this Court should reject Cork's invitation as well.

42

**B.    This Court Has Already Rejected Cork's Theory Of Unfair Competition.**

Even if the district court or this Court had authority to expand D.C. tort law, Cork's desired expansion is blocked by this Court's existing unfair competition precedent.

*Ray v. Proxmire* involved a legal theory indistinguishable from Cork's.  In that case, the operator of a tour and hospitality service sued the owner of a competing business who was the wife of Senator William Proxmire, the senior U.S. Senator from Wisconsin, and Senator Proxmire himself.  581 F.2d at 999-1000.  The plaintiff alleged that the Senator "arranged for use of Senate rooms by [Ms. Proxmire's] clientele" and "voted favorably to positions supported by [her business's] existing or potential customers in order to further [the business's] interests."  She further alleged that Ms. Proxmire had used "the prestige and contacts enjoyed by a senator's wife . . . to gain competitive advantages."  *Id.* at 1002.  In particular, Ms. Proxmire's business had "secured entry to the vice-presidential mansion, the west lawn of the Capitol, State Department entertaining rooms[,] and various rooms in the Senate office buildings"—arrangements that the plaintiff's business "could not match"—and even "offer[ed] the opportunity to meet wives of

43

governmental officials and to see their private homes." *Id.* at 1003. Senator and Ms. Proxmire's "fame and ability to 'open doors'" was allegedly "[t]he key to [the business's] success." *Id.*

Despite these allegations that Ms. Proxmire's business was deliberately trading on Senator Proxmire's office, the Court affirmed dismissal of the plaintiff's unfair competition claim. The allegations did not amount to "legally-cognizable wrongdoing" because the "simple use of one's status in society is not itself illegal." *Id.* And "financial success does not become unlawful simply because it is aided by prominence." *Id.*

Cork's unfair competition claim fails for the same reasons, and its arguments for disregarding *Proxmire* do not withstand scrutiny. According to Cork, "[t]here was no allegation by the plaintiff in *Proxmire* that the individuals who patronized the Senator's wife's business were doing so in order to curry favor with the Senator himself in the interest of securing future official actions from him in their favor." Cork Br. 49. But that is untrue, as the foregoing discussion has already shown: again, the *Proxmire* plaintiff alleged that the Senator "arranged for use of Senate rooms by [the business's] clientele" and "voted favorably to positions supported by its existing or potential customers in order to

further [the business's] interests." 581 F.2d at 1000. Cork also errs in claiming that only Ms. Proxmire was accused of acting unlawfully. Senator Proxmire was a co-defendant, and the Court rejected the plaintiff's attempt to base her suit—against either defendant—on allegations that the Senator was using his official position to benefit his wife's business.

Nor is it significant that *Proxmire* did not involve "a lease with a provision similar to section 37.19 of the [Hotel's] lease." Cork Br. 49 n.6. The *Proxmire* plaintiff similarly attempted to invoke external legal restrictions on government officials' conduct—in that case, a Senate rule and a criminal statute—to bolster her "common-law-tort cause of action," but the Court rejected those efforts because these external legal restrictions did not define the common-law duty of care. 581 F.2d at 1001.

The same is true for Cork's attempt to use the Hotel lease to define what constitutes unfair competition. *See* Cork Br. 45-48. Courts regularly reject efforts to base tort claims on alleged contractual breaches where the plaintiff is neither a party to nor an intended beneficiary of the contract at issue. *See, e.g.*, *Fort Lincoln Civic Ass'n v. Fort Lincoln New*

45

*Town Corp.*, 944 A.2d 1055, 1069-70 (D.C. 2008) (rejecting breach of trust, conversion/misappropriation, breach of fiduciary duty/fraud/non-disclosure, and negligence claims that impermissibly re-characterized a breach of contract claim that the plaintiffs were barred from pursuing because they were not intended beneficiaries of the contract); *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1161 (9th Cir. 2016) ("[Plaintiff] is prohibited from 'bootstrap[ping]' an unfair-competition claim using a failed breach-of-contract claim, because '[p]ermitting such recovery would completely destroy the principle that a third party cannot sue on a contract to which he or she is merely an incidental beneficiary.'" (citation omitted)).  Because Cork is not an intended beneficiary of the lease, it cannot premise its tort claim on the lease.

But even if Cork were an intended beneficiary of the lease, there would be no reason to take this contract as an authoritative reflection of D.C. unfair competition law:  the General Services Administration has no jurisdiction over standards of fairness among competitors under District law, and the lease does not purport to address fairness among competitors.  Besides, the contracting parties here agree that the contract

46

has not been breached. JA84; JA93. If the contracting parties were indeed the arbiters of what qualifies as unfair competition, their shared view that Defendants are in compliance with the lease's requirements should foreclose Cork's arguments.

Because *Proxmire* is materially indistinguishable, the district court correctly treated it as binding precedent. JA19-21; *see also Unidisco, Inc. v. Schattner*, 824 F.2d 965, 968-69 (Fed. Cir. 1987) (following *Proxmire* and stating, "Where the District of Columbia Court of Appeals has not addressed the issue, we will not expand the scope of the tort of unfair competition recognized in existing case law"). After all, when this Court construes D.C. tort law, it is attempting "to achieve the same outcome [that it] believe[s] would result if the District of Columbia Court of Appeals considered [the] case." *Novak v. Capital Mgmt. & Dev. Corp.*, 452 F.3d 902, 907 (D.C. Cir. 2006). As a result, this Court's pronouncements about D.C. law are precedential in this Court and the district court absent intervening D.C. Court of Appeals authority that "clearly and unmistakably" discredits this Court's prior decision. *Fairbanks v. Roller*, 314 F. Supp. 3d 85, 94 (D.D.C. 2018) (citation omitted); *see also Wankier v. Crown Equip. Corp.*, 353 F.3d 862, 866 (10th

Cir. 2003) ("[W]hen a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit, and on subsequent panels of this Court, unless an intervening decision of the state's highest court has resolved the issue.").

No intervening D.C. Court of Appeals authority casts doubt on *Proxmire*. On the contrary, the only intervening unfair-competition authority from that court is *B&W Management*, 451 A.2d at 881 n.3. And far from expanding unfair competition beyond what *Proxmire* recognized, *B&W Management* simply confirms that the tort is limited to a discrete set of wrongful acts, none of which was alleged in *Proxmire* or in this case. *See supra* Section III.A. So *Proxmire* controls, and Cork's claim must be rejected.[13]

---

[13] Because existing D.C. Court of Appeals and D.C. Circuit precedent already answer the question at hand, this Court should ignore Cork's half-hearted conjecture that the Court "may wish to consider certifying" the question to the D.C. Court of Appeals. Cork Br. 40 n.4. Where, as here, there is not just a "discernible path" for this Court to follow but directly on-point precedent, certification is inappropriate. *Dial A Car, Inc. v. Transp., Inc.*, 132 F.3d 743, 746 (D.C. Cir. 1998); *see also, e.g.*, *Hughes v. Tobacco Inst., Inc.*, 278 F.3d 417, 425 (5th Cir. 2001) ("[C]ertification is not 'a proper avenue to change our binding precedent.'" (citation omitted)).

## IV.    In The Alternative, Cork's Claim Is Foreclosed By The President's Federal Defenses.

If Cork's unfair competition were viable under D.C. law, Cork's claim would still be barred by federal law. As discussed at length above, the Supremacy Clause and Presidential Eligibility Clause preclude the District of Columbia from imposing its own requirements on holding the Presidency. *See supra* Section I.A.1. And, separately, the doctrine of presidential immunity precludes Cork from imposing personal liability on the President based on the Presidency. *See supra* Section I.A.2. But the Court need not resolve the applicability of either of these defenses because Cork's claim fails for more basic reasons under D.C. law.

## CONCLUSION

For all these reasons, the Court should affirm the judgment of the district court.

Dated:  July 15, 2019

Respectfully submitted,

/s/ Rebecca Woods

Rebecca Woods
SEYFARTH SHAW LLP
975 F Street, N.W.
Washington, D.C. 20004
T. 202.463.2400
rwoods@seyfarth.com

Esther Slater McDonald
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.,
    Suite 2500
Atlanta, Georgia 30309
T. 404.885.1500
emcdonald@seyfarth.com

Counsel for
Trump Old Post Office, LLC

/s/ Eric W. Sitarchuk

Eric W. Sitarchuk
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, Pennsylvania 19103
T. 215.963.5000
eric.sitarchuk@morganlewis.com

Fred F. Fielding
Michael E. Kenneally
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
T. 202.739.3000
fred.fielding@morganlewis.com
michael.kenneally@morganlewis.com

Counsel for Donald J. Trump

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 10,058 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(e)(1), according to the word count of Microsoft Word 2016.

This brief also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared using Microsoft Word 2016 in Century Schoolbook 14-point font, a proportionally spaced typeface.

Dated: July 15, 2019          */s/ Eric W. Sitarchuk*
                             Eric W. Sitarchuk

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 15, 2019, a copy of the foregoing was served upon all counsel of record by operation of the Court's CM/ECF system.


Dated:  July 15, 2019                     */s/ Eric W. Sitarchuk*
                                          Eric W. Sitarchuk

52