**NOT CURRENTLY SCHEDULED FOR ORAL ARGUMENT**

## No. 18-7185

_____

_____

### UNITED STATES COURT OF APPEALS
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

K&D, LLC t/a Cork

                                   Plaintiff-Appellant

        v.

TRUMP OLD POST OFFICE, LLC, *et al*.

                                   Defendants-Appellees

_____

On Appeal From The United States District Court
For The District Of Columbia

_____

### REPLY BRIEF OF APPELLANT

_____

Scott H. Rome                          Mark S. Zaid
Christopher LaFon                      Bradley P. Moss
THE VERITAS LAW FIRM                   MARK S. ZAID, P.C.
1225 19th Street, N.W.                 1250 Connecticut Avenue, N.W.
Suite 320                              Suite 700
Washington, D.C. 20036                 Washington, D.C. 20036
(202) 686-7600                         (202) 454-2809
srome@theveritaslawfirm.com            Mark@MarkZaid.com

Alan B. Morrison
GEORGE WASHINGTON UNIVERSITY
LAW SCHOOL
2000 H Street, N.W.
Washington, D.C. 20052
(202) 994-7120
abmorrison@law.gwu.edu

Attorneys for Appellant

## TABLE OF CONTENTS

TABLE OF  CONTENTS…………………………………………………………......i

TABLE OF AUTHORITIES………………………...…………………………….. …...ii

SUMMARY OF ARGUMENT…………………………...…………………………1

ARGUMENT…………...……………………………………………………………... 2

I.     The District Court Erred by Denying Appellant's Motion to Remand…………... 2

         A.  Federal Officer Removal Was Not Authorized……………………............ 3

         B.  There is No Federal Law Claim in this Case……………….………………… 13

II.     The Complaint States a Claim for Unfair Competition Under District Law…….15

CONCLUSION……………………………………………………………………..20

# TABLE OF AUTHORITIES

**Cases**

*Akerblom v. Ezra Holdings Ltd* ............................................................................. 12

*B & W Mgmt. v. Tasea Inv. Co.*, 451 A.2d 879, 881 n.3 (D.C. 1982) ........................... 16

*Camarda v. Certified Fin. Planner Bd. of Standards, Inc.*, 672 F. App'x 28 ................. 17

*Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256 (5th Cir. 1995) ..................... 10

*Grable & Sons Metal Prods., Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308
   (2005 ........................................................................................................... 14

*Jefferson Cty. v. Acker*, 527 U.S. 423, 431(1999), ...................................... 3, 4, 7

*Johnson v. Maryland,* 254 U.S. 51, 57 (1920), ........................................................ 7

*Nixon v. Fitzgerald,* 457 U.S. 721 (1982) ........................................................... 4

*Ray v. Proxmire,* 581 F.2d 998 (D.C. Cir. 1978) ........................................ 2, 18, 19, 20

*Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, ........................................ 17

*Watson v. Phillip Morris Companies, Inc* ......................................................... 11

*U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 ............................................ 4

**Statutes**

D.C. Code 28-2904 ................................................................................... 16

28 U.S.C. § 1331 ..................................................................................... 2, 14

28 U.S.C. § 1442(a)(1) .............................................. 2, 3, 6, 7, 8, 9, 10, 11,12, 13

28 U.S.C. § 1441(a) ................................................................................... 14

**Journals Articles, Books, and Restatements**

W. PAGE KEETON, PROSSER & KEETON ON THE LAW OF TORTS (5th ed. 1984),
    § 130, pp. 1013-14 ................................................................................................. 16

WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS (4th ed. 1971), §
    130, pp. 956-57 ....................................................................................................... 16

## SUMMARY OF ARGUMENT

The fundamental flaws in appellees' arguments are front and center in the introduction to their joint brief. On the removal issue, they rely on appellee Trump's "service in office" and the fact that the basis of the complaint would be lacking "but for President Trump's Presidency" (Br. 2). However, the removal statute requires more than that the defendant be a federal officer; it is available only where "acts" of the defendant that are the basis of the plaintiff's claim are subject to a colorable federal defense. But in this case, appellant has not singled out appellee Trump for liability because he is the President, but because he is an elected official doing business here in the District of Columbia, just like the 535 members of Congress and the nearly 20 elected officials of the District of Columbia who would also be engaged in unfair competition if they had an ownership interest in the Hotel or other comparable property. In addition, the removal statute exists to enable federal officials to defend their right to carry out their official duties in the face of a competing state law, but in this case appellee Trump can point to no official duty or responsibility that he would be precluded from undertaking if the injunction sought by appellant were granted.

On the issue of whether the complaint states a claim for unfair competition under the law of the District of Columbia, appellees continue to

rely on the same two unwarranted propositions: (1) unfair competition "is a limited tort" which applies only to "specific types of prohibited conduct" (Br. 2); and (2) the claim is "blocked by this Court's precedent" in *Ray v. Proxmire,* 581 F.2d 998 (D.C. Cir. 1978) because "deriving a competitive advantage from federal office is not actionable unfair competition under D.C. law" (Br. 3).  The first is mistaken because there is no all-inclusive list of types of conduct that constitute unfair competition under D.C. law, and the cases on which appellees rely do no more than set forth various conduct that "may" constitute unfair competition, without any statement, much less a holding, that the list is exclusive. As for the 41-year old decision in *Proxmire,* while there are some similarities to this case, there are far more differences, and therefore *Proxmire* is not "binding" D.C. law in this case.

## ARGUMENT

## I.  THE DISTRICT COURT ERRED BY DENYING APPELLANT'S MOTION TO REMAND.

The bulk of appellees' argument on the removal issue is based on the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  Appellant will respond to those arguments first and then turn to the argument that its claim arises under federal law and is therefore removable under 28 U.S.C. § 1331.

On both issues, appellees cannot rely on the district court's ruling, which simply said "Denied."

### A. Federal Officer Removal Was Not Authorized.

The principal dispute between the parties regarding section 1442(a)(1) is what is required in order for a court to conclude that the officer was sued "for or relating to any act under color of such office."  Appellant contends that there must be an "act" that forms the basis of its complaint for the statute to apply and that there is no such act alleged in the complaint.  Indeed, one of the cases on which appellees principally rely, *Jefferson Cty. v. Acker*, 527 U.S. 423, 431(1999), is quoted on page 13 of their brief as requiring the removing officer to "show a nexus" between the challenged "conduct and asserted official authority."  Because appellees can point to no act or "conduct" that appellee Trump has undertaken while in office on which appellant relies, section 1442(a)(1) is not available as a basis for removal.

Appellees have two responses: because the complaint effectively challenges President Trump's status as President, that is enough to satisfy the statute, and in any event, there were such two acts in the original complaint, which further justify removal. We respond to each in turn.

1. At the outset, several points are important regarding the status argument.  First, Cork's claim is not unique to the President: it would be the

same if the defendant were an elected officer of the District of Columbia or a member of Congress, including the District's non-voting delegate. Second, contrary to appellees' assertion (Br. 21), and unlike the law in *U.S. Term Limits, Inc. v. Thornton*, 514 U.S. 779 (1995), D.C.'s unfair competition law does not "add to the qualifications that the Constitution establishes for the Presidency" or erect a barrier or impose a burden on any person seeking an elected office. Because appellee Trump's election as President and his status as such will be unaffected by any relief that Cork obtains in this case, *Term Limits* is irrelevant. Third, if the relief that appellant seeks is granted, it will in no way interfere with appellee Trump's ability to carry out any of his official duties as would have been the case if the law at issue in *Jefferson County, Ala. v. Acker,* 527 U.S. 423 (1999), had actually made prevented the defendants from serving as federal judges unless they paid the license fee.

Fourth, nor would a court order here deter appellee Trump from faithfully performing the obligations of his office, which is the rationale behind the immunity granted in *Nixon v. Fitzgerald,* 457 U.S. 721 (1982). Although appellees characterize the claim as one directed against appellee Trump as President, it is actually directed only against him in his private capacity. That is the distinction that appellant made in discussing the pre-inaugural White Paper that his counsel prepared to demonstrate that appellee

Trump's business and presidential worlds would become entirely separate. Opening Br. 33. The issue is not, as appellees suggest in note 6, page 27, whether appellee Trump succeeded in completing that separation, but that he and his counsel recognized the need for him to do so.

Appellees contend that the complaint comes within section 1442 because appellant has sued appellee Trump because he is President. According to appellees (Br. 2), appellant's claim is "based on President Trump's presidential office, … [is] dependen[t] on President's Trump service in office, [and] the conduct would not be tortious but for President Trump's Presidency." [1] Appellees argue that state laws that are triggered when a person becomes President (or any other federal office) are invalid even if they operate only on that individual's personal, not Presidential affairs. A few examples demonstrate the error in that conclusion.

Consider a state law that reduced property taxes for owners of a principal residence and that required that the owner actually live there. An individual who was elected President and moved to the White House would lose that exemption "because he is the President," but surely that law is valid.

---

[1] *See also id.* at 5: "Cork's whole theory of unfair competition rests on President Trump's federal office;" *id.* at 10: "doctrine of presidential immunity forbids Cork's attempt to impose personal liability on a President for his service as President;" *id.* at 23: plaintiff seeks to impose liability based "on President Trump's service in office."

By the same logic, a state law that required state officials to resign their state positions if elected or appointed to a federal office would surely be constitutional. Similarly, if a state had a law that barred elected officials from serving on the boards of non-profit organizations that solicit funds from the public (on the theory that elected official might exert improper influence by asking for a donation), a President or member of Congress who served on such a board could not claim that they were constitutionally immune from such a law, let alone that they could use section 1442 to remove a suit seeking a court order enforcing that law.  And, although appellees seek to distinguish the removal hypotheticals on pages 28-29 of appellant's brief on the ground that they could arise "regardless of the defendant's occupation," (Br. 31, n. 8), there are essential elements in each of them that could apply only to claims against the President of the United States, albeit in his individual capacity. Finally, appellees argue (Br. 14) that states may not impose "conditions on holding federal office," but so long as persons holding federal office may continue to do their official jobs, no case holds that state laws that have adverse consequences for their personal lives are forbidden or that removal is permitted under section 1442(a)(1) to challenge such a law.

Perhaps the most important reason why section 1442 does not apply here is that its purpose is to assure that, if a federal officer is required to act in

a certain way to carry out her federal duties, and that conduct is alleged to be inconsistent with a state law, the federal courts should be available to have the federal defense adjudicated. Thus, in a case like *Johnson v. Maryland,* 254 U.S. 51, 57 (1920), where the state sought to impose "qualifications in addition to those that the [federal] Government has pronounced sufficient," the federal courts are available to pass on the validity of that state law. So too, removal was proper in *Jefferson Cty, supra,* because the judges alleged that the local law prevented them from carrying on their official duties, and the federal court was available through section 1442(a)(1) to decide whether there was an improper state interference with the duties of a federal officer. Because appellees can point to no presidential duty of appellee Trump which he could not perform if appellant prevails, the rationale behind section 1442(a)(1) is inapplicable, and removal under it was not warranted.

There is no case, cited by appellees or otherwise, which creates a federal defense to a neutral state law, let alone one that exempts persons serving as President of the United States from such laws. Indeed, the limits of presidential immunity in *Nixon v. Fitzgerald,* 457 U.S. 731, 756 (1982), to "acts within the 'outer perimeter' of his official responsibility," makes clear that there are limits to presidential immunity, and owning a hotel is far outside those boundaries. Thus, even if section 1442(a)(1) applied to the "status" of

being President, and not just to acts taken by the President, the claim of status immunity is not colorable as applied to this case, and hence removal under section 1442(a)(1) was not proper.[2]

2.   Much of appellees' argument on the "act" requirement of section 1442(a)(1) relates to the 2011 amendment adding the phrase "for or relating to" immediately before "any act."  But that addition did not eliminate the key word "act," and the absence of any alleged acts "under color of his office" by appellee Trump after he became President, and on which appellant bases its amended complaint, is the downfall of this argument. Section 1442(a)(1) requires a specific act by a federal officer that is the basis of the state claim, and appellees are mistaken that "a connection and association between this case and the Presidency" (Br. 30), is all that is needed to justify removal. Every case that appellees cite on page 30 contains specific official acts undertaken by the federal officer which they allege were being either forbidden or penalized by the plaintiff (often a state or locality) from doing.

---

2. Appellee Trump is well aware of the distinctions between his acts undertaken in his personal capacity vs those done in his official capacity.  He apparently chooses the capacity that is most helpful to his legal position, as evidenced by his claim – now rejected by the Second Circuit – that his twitter account was purely personal, even though he used it to make official announcements, with the assistance of an individual who was on the federal payroll. *Knight First Amendment Institute v. Trump, Knight First Amendment Institute v. Trump,* 2019 WL 2932440 (2d Cir. 2019).

On this aspect, it is not the absence of a colorable federal defense that is the problem, but appellee Trump's failure to point to any official act that he did while in office on which Cork is relying for its unfair competition claim. To the contrary, as noted in our opening brief (Br. 47), Cork contends that the failure of appellee Trump to divest his interest in the Hotel *before* he became President was the act that triggered Cork's unfair competition claim. Before that, he was not a federal officer and hence not eligible to use section 1442(a)(1).

In response, appellees point (Br. 31) to two allegations in paragraph 20 of the original complaint that they claim satisfy the "act under color of such office" requirement. Paragraph 20 was mentioned in paragraph 12 of appellee Trump's notice of removal (JA 61), but neither allegation was quoted or paraphrased there. Paragraph 20(d) alleged that appellee Trump "highlighted the Hotel in a meeting with a senior member of the House of Representatives and generated media promotion/coverage of the Hotel." JA 32. Paragraph 20(b) noted that, during the post-inaugural parade, appellee Trump and his family "chose to exit their motorcade near the Hotel, thereby maximizing television coverage of the event and drawing further attention their property." JA 31. It was not until his response to appellant's motion to remand that

appellee Trump focused on these two allegations, asserting that they were post-inaugural acts that satisfied the "act" requirement of section 1442(a)(1).

In its reply, appellant clarified that the undated incident involving the member of the House of Representatives took place well before the Inauguration and pledged to clarify that in an amended complaint. JA 22. As to the parade event, Cork's reply stated that it had not relied on that for its claim and agreed to delete it when it filed an amended complaint. JA 22 at 5. After the remand motion was denied, appellant was granted leave to amend its complaint to delete paragraph 20(b), to clarify the time for paragraph 20(d), and to change its address to its new location.

Although appellees describe these changes as small (Br. 4 note 1, & 8), they nonetheless insist that they came too late and that removal was proper based on the allegations in the original complaint (Br. 25-26). That contention is without merit, and the case on which it relies, *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256 (5th Cir. 1995), does not support such a harsh and unreasonable position. *Cavallini* was a diversity case in which the primary out-of-state defendant claimed that the local defendant had been fraudulently joined and hence that its presence did not preclude removal. Plaintiff moved to remand, arguing that the joinder was proper, relying exclusively on its original complaint. During the many months that the remand motion was

pending, plaintiff did not seek to amend his complaint or suggest that he had any further basis for his claims against the local defendant.  It was only after the district court ruled against remand did plaintiff offer new allegations to support the disputed claim, but even they did suffice.  It was in that context that the court of appeals stated that removals must be judged based on the original complaint on which appellees rely to permit "early resolution of which court has jurisdiction." *Id.* at 264.  But even then, the court made clear that its ruling did not apply to clarifications (*id.* at 265), which, even under appellees' approach, eliminates the House member incident as a relevant act.

The best evidence that removals under section 1442(a)(1) need not be based exclusively on the facts in the complaint at the time of removal is found in *Watson v. Phillip Morris Companies, Inc.,* 551 U.S. 142 (2007).  There the defendant private companies relied on section 1442(a)(1) to remove the products liability claim against them on the theory that the companies had been "acting under" federal agencies in engaging in the conduct that gave rise to that claim.  The Court found that removal was not proper, but did not limit its inquiry to what the plaintiff alleged in the complaint: "We have examined all of the documents to which Philip Morris and certain supporting *amici* refer [and] none of these documents establish the type of formal delegation that might authorize Philip Morris to remove the case." *Id.* at 156.  *See also*

11

*Akerblom v. Ezra Holdings Ltd.,* 509 Fed.Appx. 340, 344 (5th Cir. 2013) ("post-removal filings may be considered only to the extent they amplify or clarify facts alleged in the state-court complaint, with new claims or theories of recovery disregarded.") [3]

As to the parade allegations in this case, appellant immediately made clear that it was not relying on them to support its claim on the merits. In these circumstances, the amendment deleting them was not a change in legal theory, but rather like a court ruling that a particular fact or piece of evidence was inadmissible because it was protected by a privilege or in this case immunity. Furthermore, the notice of removal did not focus on that act as a basis for removal, but instead only argued in paragraph 14 that "[t]he gravamen of the complaint is thus that the Hotel's business activities constitute unfair competition *because* President Trump is the President of the United States. *See* Compl. ¶ 31." JA 61 (emphasis in original). Appellees' attempt to base removal on the parade incident alone is not merely asking the tail to wag to the dog, but it seeks to use the very tip of the tail to accomplish that very large end. In addition, because the basic purpose of section 1442(a) is to enable federal officers to have federal not state courts decide issues of

---

[3] Nor is this case like *Ching v. Mitre Corp,* 921 F.2d 11 (1st Cir. 1980), in which the plaintiff sought to amend his complaint by deleting a fully pled federal claim in an effort to eliminate the basis for removal.

federal immunity, and because appellant is not relying on the parade incident for its claim, the purpose of section 1442 would not be served by allowing removal based on a single allegation in one subparagraph that appellant disavowed as soon as appellee Trump pointed it out.

Despite their persistent claims that appellant is seeking to create unfair competition liability for acts that appellee Trump undertook since he became President, there is one glaring flaw in that argument. In their discussion of the merits of appellant's claim (Br. 36-48), they do not point to a single act of appellee Trump – post-Inauguration – on which appellant relies as the basis of its claim. This omission further confirms what appellant has argued from the outset: this case is based on what appellee Trump failed to do before he became President and hence that there is no act that he undertook as President on which appellant relies and that can properly form the basis for removal under section 1442(a)(1).[4]

**B.  There is No Federal Law Claim in this Case.**

Appellees also claim that removal was proper because the court is required to decide a question of federal law in order to adjudicate appellant's claim. According to appellees, because appellant cited section 37.19 of the

---

[4]Appellees' half-page immunity argument (Br. 49) is not to the contrary as it is not based on any acts of the President but relies on their claim that appellant's suit is based on appellee Trump' status as President.

Lease, which they assert is governed by federal law, that makes this case one arising under federal law under 28 U.S.C. § 1331 for which removal is proper under 28 U.S.C. § 1441(a). But both the original and the amended complaints are clear, as have been all of the appellant's subsequent filings, that they are relying only on D.C. law and that appellant has cited section 37.19 only as an example of the application of the District's law of unfair competition. Although appellant has questioned whether appellees are complying with that provision, they do not ask any court to adjudicate that question, but only to rule on the District's law of unfair competition. And because *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Manufacturing,* 545 U.S. 308 (2005), dealt only with removal where there were issues of federal law that had to be decided, it has no bearing on this case.

Perhaps the most telling argument as to why this case does not arise under federal law is that the District Court, in its ruling on the merits, relied solely on DC, not federal law. It could not have done that if it had agreed with appellees that appellant asserted a federal law claim and that the case was properly removed on that basis.

Appellees also renew their argument that, to grant appellant the injunctive relief that it seeks, would violate various terms of the Lease. Thus, they argue that, because federal law governs the Lease, those provisions

14

would override District law.  For that reason, they argue, the case was properly

removed to federal court, even if appellant's claim is based solely on District

law. There are two problems with that proposition: first, appellees' argument

is that of preemption, and as appellant showed in its opening brief (46),

preemption is only a basis for removal if there is field preemption, which even

appellees do not contend here.  Second, the preemption asserted is quite

limited: it only applies to the injunctive relief that appellant seeks.  It does not

apply to the request for a declaratory judgment that appellees are engaged in

unfair competition, which is also sought in the complaint.  Appellees have not

asserted that they would not comply with such a judgment, including by

negotiating with GSA over the Lease, and for that reason as well, even if their

assertions regarding the Lease's provisions that might affect the claim for

injunctive relief were valid, that does not make the claim for a declaratory

judgment one arising under federal law or create a basis for removal under

section 1441.

## II. THE COMPLAINT STATES A CLAIM FOR
## UNFAIR COMPETITION UNDER DISTRICT LAW.

The district court concluded that the law of the District of Columbia on

unfair competition precluded appellant from proceeding to discovery on its

claim.  It did so despite the fact that the Court of Appeals for the District of

Columbia last spoke on this issue in 1982 in a footnote in a case in which the

pro se plaintiff added an unfair competition claim to what was essentially a property-contract dispute. *B & W Mgmt. v. Tasea Inv. Co.*, 451 A.2d 879, 881 n.3 (D.C. 1982). After rejecting that unfair competition claim, the court listed a number of types of conduct that "may" constitute unfair competition, but with no indication that the list is exclusive, as there might be in a statute such as the District's unfair or deceptive trade practices law, D.C. Code 28-2904. Even in that statute, which lists more than 35 separate acts or violations that injure consumers, but not competitors, the list is not exclusive, as evidenced by the term "including" which precedes the list.

Furthermore, the source for that footnote, WILLIAM L. PROSSER, HANDBOOK OF THE LAW OF TORTS (4th ed. 1971), § 130, pp. 956-57, uses the same "included" and "may" language as the footnote in *B&W*, and has an additional cautionary statement: "These practices are a full subject for a treatise in themselves, and in the space here available it is impossible to do more than touch on them, and indicate the lines which the law has followed" (footnotes omitted). The next edition of that Handbook, W. PAGE KEETON, PROSSER & KEETON ON THE LAW OF TORTS (5th ed. 1984), § 130, pp. 1013-14, confirms the expanding nature of the law of unfair competition: "The topic is now a field in itself, and the subject of many articles and treatises and so large

and specialized that the American Law Institute has concluded that it is a separate field, to be excluded from the Restatement of Torts altogether" (footnotes omitted). That Handbook went on to note that "it should be obvious that only a sketch of the common law background can be provided, along with very rough indications of the modern statutory development" and that liability can arise "when the defendant engages in any conduct that amounts to a recognized tort and when the tort deprives the plaintiff of customers or other prospects." *Id.* at 1014.

These discussions, as well as the general authorities cited in appellant's opening brief (Br. 49-51) do not establish appellees' liability. However, they do demonstrate that appellees' claim (Br. 2) that the footnote in *B&*W establishes that unfair competition "is a limited tort in the District," for which "plaintiffs must allege specific types of prohibited conduct," is plainly overstated. And the two decisions that appellees have added - *Camarda v. Certified Fin. Planner Bd. of Standards, Inc.*, 672 F. App'x 28 (D.C. Cir. 2016) and *Sabre Int'l Sec. v. Torres Advanced Enter. Sols., LLC*, 13 F. Supp. 3d 62 (D.D.C. 2014) – only repeat what other cases hold: some conduct, especially that which fails to state a claim under another legal theory, does not

amount to unfair competition.  But they too fail to establish boundaries that would rule out appellant's claim here.

The difficulty for this Court is that there are no decisions of any court, cited by appellees, with the possible exception of *Ray v. Proxmire,* 581 F.2d 998 (D.C. Cir. 1978), discussed below, in which the facts are remotely similar to this case. At most those cases give examples of other conduct which do, or in many cases, do not constitute unfair competition, and even they are not decisions from the Superior Court or D.C. Court of Appeals.  The uncertain state of the law was a significant reason why appellant filed this case in the Superior Court and why it suggested in its opening brief that, if this Court did not order a remand, it may wish to certify the question to the D.C. Court of Appeals.  In their brief (48, note 13), appellees contend that "existing D.C. Court of Appeals and D.C. Circuit precedent already answer the question at hand," and that, because these decisions constitute "directly on-point precedent, certification is inappropriate."  The facts alleged in the complaint in this case may or may not constitute unfair competition under District law, but appellees' assertions about the clarity of the relevant case law are plainly in error.

There is one fact in this case which is not present in any other unfair competition decision: section 37.19 of the Lease between appellees and the

GSA. Appellant is not suing on the Lease or as a third party beneficiary of it, or on any variation of such claims, which is what the cases that appellees cite (Br. 45-46) hold. Rather, it cited this provision, which forbids any federal or District elected official from obtaining any benefit from the Lease, as an illustration of one principle of unfair competition under District law. That principle is that it is unfair to competitors for elected officials to own businesses in the District because they can use their political clout (not simply their "fame" as appellees suggest, Br. 9, 44), rather than the quality of their goods or services to attract customers, because the customers may wish to curry favor with the elected official.

Appellant argues that it is particularly appropriate to apply this principle to appellees because they signed the Lease which sets forth this principle in language whose intent could not be clearer. And, it is also consistent with the standard form GSA lease, which appellant noted in its opening brief (Br. 53) and which appellees ignored. This application of what appellant contends is a common law principle of the District is important, but not essential to its claim, which is why appellees are mistaken when they insist that appellant's claim is one based on federal not D.C. law.

Finally, there is the per curiam decision in *Ray v. Proxmire* which is not the "binding" authority appellees assert it to be (Br. 2), nor is Cork's claim

"blocked" by that precedent (Br. 43). *Proxmire* has some similarities to this case but also many differences. To restate the obvious: the opinion is more than 40 years old; the complaint was filed pro se; it included many claims of which unfair competition appears to have been a throw-in; the elected official was not the defendant causing the alleged unfair competition; and at most it is a federal court view of what the local law was at the time. Appellant does not suggest that *Proxmire* has no bearing on this case, but only that it does not bear anywhere near the weight which appellees ascribe to it. In our view, its inconclusiveness provides another reason why certification of the unfair competition question to the D.C. Court of Appeals may be the best way for this Court to deal with that issue.

## CONCLUSION

For the foregoing reasons, the judgment below should be reversed with instructions to remand the case to the Superior Court for the District of Columbia. In the alternative, this Court should (1) certify the unfair competition question to the District of Columbia Court of Appeals or (2) remand the case to the District Court for further proceedings on the merits of appellant's unfair competition claim.

Respectfully submitted,

| | |
|---|---|
| Scott H. Rome | Mark S. Zaid |
| Christopher LaFon | Bradley P. Moss |
| THE VERITAS LAW FIRM | MARK S. ZAID, P.C. |
| 1225 19th Street, N.W. | 1250 Connecticut Avenue, N.W. |
| Suite 320 | Suite 700 |
| Washington, D.C. 20036 | Washington, D.C. 20036 |
| (202) 686-7600 | (202) 454-2809 |
| srome@theveritaslawfirm.com | Mark@MarkZaid.com |

Alan B. Morrison
GEORGE WASHINGTON UNIVERSITY
LAW SCHOOL
2000 H Street, N.W.
Washington, D.C. 20052
(202) 994-7120
abmorrison@law.gwu.edu

Attorneys for Appellant

August 5, 2019

## CERTIFICATE OF COMPLIANCE

I, Mark S. Zaid, counsel for the Appellant K&D LLC, do hereby certify pursuant to FRAP 26(g)(1), that the foregoing Reply Brief of Appellant contains 4,632 words, excluding those portions of the brief specifically authorized by that Rule and Circuit Rule 32(e) to be excluded.

_____/s/_____
Mark S. Zaid

## CERTIFICATE OF SERVICE

I hereby certify, pursuant to D.C. Circuit Rule 25(c) that on August 5, 2019, the foregoing Reply Brief of Appellant was electronically filed with the Clerk of the Court using the CM/ECF system, which will send a notification to the attorneys of record in this matter who are registered with the Court's CM/ECF system.

_____/s/_____

Mark S. Zaid

August 5, 2019